# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| UNITED STATES OF AMERICA, </br></br> Plaintiff, </br></br> v. </br></br> FORMER BROWN SHOE FACTORY SITE, 430 South 19th Street, Murphysboro, Illinois, </br>*in rem* </br></br> and, </br></br> 3ACX DBA Z GAS, LLC, </br></br> Defendants. | Case No. 3:25-cv-956 |

## COMPLAINT

The United States of America, by the authority of the Attorney General of the United States and through the undersigned attorneys, acting on behalf of the Administrator of the United States Environmental Protection Agency ("EPA"), files this Complaint and alleges:

## Nature of the Action

1. This is a civil action brought by the United States pursuant to Section 104(e) of the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), as amended, 42 U.S.C. § 9604(e). In this action, the United States seeks access to a contaminated former industrial property known as the Brown Shoe Factory Site (the "Site") located in Murphysboro, Illinois. The Site property contains partially demolished remnants of the former factory building and abandoned equipment that is contaminated with asbestos and other hazardous substances. EPA has been unable to obtain consent for access to the Site from the

1

owner of record. EPA has obtained consent from a tenant who uses parts of the building as storage.

2.      Through this action, the United States seeks an Order in Aid of Access ("Access Order") providing EPA, and its designated representatives, with a right of access to the Site property to implement necessary actions to remove the asbestos contamination and other hazardous substances that pose threats to public health, welfare, or the environment.

## Jurisdiction and Venue

3.  This Court has exclusive jurisdiction over the subject matter of this action and jurisdiction over the Defendants under: (i) CERCLA Sections 104(e)(5)(B), 113(b), and 113(e), 42 U.S.C. §§ 9604(e)(5)(B), 9613(b), and 9613(e); (ii) 28 U.S.C. §§1331 and 1345; and (iii) Federal Rule of Civil Procedure 4(n).

4.      Venue is proper in this judicial district pursuant to Section 113(b) of CERCLA, 42 U.S.C. § 9613(b), and 28 U.S.C. § 1391(b), because the release or threatened release of a hazardous substance or substances that gives rise to this claim occurred and is occurring in this district and the Site is located within this district.

## Defendants

5.      Defendant Site property is located at 430 South 19th Street in Murphysboro, Illinois, and is the subject of this in rem action. It is assigned Property Index Number 14-08-234-012 in Jackson County records.

6.      The current record owner of the Site property is Defendant entity, 3ACX DBA Z GAS, LLC (the "LLC Owner"). However, there is no record of the LLC Owner registered with the Illinois Secretary of State.

7. According to Jackson County's online property tax records, the LLC Owner purchased the Site property for $6,600 in July 2020, but none of the county's property tax bills for the Site property have been paid since the LLC Owner purchased the land. The same county records identify the LLC Owner's mailing address as a residential dwelling in Carmel, New York, owned by an individual named Zdzislaw Jarzebiak ("Mr. Jarzebiak"). There is also no record of the LLC Owner registered with the New York Secretary of State.

8. Currently, the Site property has two tax buyers for the year 2022 and 2023 delinquent taxes and the Site is subject to a potential tax sale by the Jackson County Trustee.

## Statutory Background

9. CERCLA Section 104, 42 U.S.C. § 9604, grants EPA broad authority to obtain access to property for its employees and authorized representatives to identify and address potential releases or threatened releases of hazardous substances.

10. CERCLA Section 104(e), 42 U.S.C. § 9604(e), provides in pertinent part:

(e) Information gathering and access

(1) Action authorized

Any officer, employee, or representative of the President . . . is authorized to take action under paragraph (2), (3), or (4) (or any combination thereof) at a vessel, facility, establishment, place, property, or location . . . . The authority of paragraphs (3) and (4) may be exercised only if there is a reasonable basis to believe there may be a release or threat of release of a hazardous substance or pollutant or contaminant. The authority of this subsection may be exercised only for the purposes of determining the need for response, or choosing or taking any response action under this subchapter, or otherwise enforcing the provisions of this subchapter.

\* \* \*

(3) Entry

Any officer, employee, or representative described in paragraph (1) is authorized to enter at reasonable times any of the following:

> (A) Any vessel, facility, establishment, or other place or property where any hazardous substance or pollutant or contaminant may be or has been generated, stored, treated, disposed of, or transported from.
>
> (B) Any vessel, facility, establishment, or other place or property from which or to which a hazardous substance or pollutant or contaminant has been or may have been released.
>
> (C) Any vessel, facility, establishment, or other place or property where such release is or may be threatened.
>
> (D) Any vessel, facility, establishment, or other place or property where entry is needed to determine the need for response or the appropriate response or to effectuate a response action under this subchapter.

11.     CERCLA Section 104(e)(4), 42 U.S.C. § 9604(e)(4), authorizes any officer, employee or representative designated under CERCLA Section 104(e)(1), 42 U.S.C. § 9604(e)(1), to inspect and obtain samples from any facility, establishment, or other place or property referred to in CERCLA Section 104(e)(3), 42 U.S.C. § 9604(e)(3), or from any location of any suspected hazardous substance or pollutant or contaminant.

12.     CERCLA Section 104(a)(1), 42 U.S.C. § 9604(a)(1), provides that whenever there is a release or substantial threat of release of a hazardous substance into the environment, EPA "is authorized to act, consistent with the national contingency plan, to remove or arrange for the removal of, and provide for remedial action relating to such hazardous substance . . . or take any other response measure consistent with the national contingency plan" that EPA deems necessary to protect the public health or welfare or the environment.

13.     CERCLA Section 104(e)(5)(B), 42 U.S.C. § 9604(e)(5)(B), provides that the United States may commence a civil action to either compel compliance with a request for access or to compel compliance with an administrative order for access. The statute provides that, where there is a reasonable basis to believe there may be a release or threat of a release of a hazardous substance, pollutant, or contaminant, the court "shall enjoin" interference with an EPA

request or order for entry "unless under the circumstances of the case the demand for entry or inspection is arbitrary and capricious, an abuse of discretion, or otherwise not in accordance with law." 42 U.S.C. § 9604(e)(5)(B)(i), (ii).

14.     CERCLA Section 104(e)(6), 42 U.S.C. § 9604(e)(6), provides that nothing in CERCLA Section 104(e) shall preclude EPA from securing access in any other lawful manner.

## General Allegations

### The Site

15.     The Site is comprised of one parcel and is located in a residential area, near the intersection of South 19th Street and Brown Place in Murphysboro.

16.     The Site is bounded to the east by an abandoned rail line and a small pond or wetland. There is single family residential property adjacent to the facility to the south and across the street on the west and north sides.

17.     The Site consists of a 3.32-acre parcel that once contained four buildings. The main building was originally a 400,000 square-feet three-story brick building but was demolished. There is also a three-story building in an advanced state of disrepair and two other buildings that remain standing on the Site. In addition, there is a roughly 160-foot-tall smokestack located on the northeastern corner of the parcel. The smokestack is in disrepair with upper portions collapsing.

18.     Brown Shoe Company constructed the three-story factory in 1902 and produced leather shoes and gloves until 1976. During operations, Brown Shoe used machines to cut, dye, iron, and sew the leather onto the shoes or gloves. A rail line shipped leather to the facility and a coal-fired furnace generated heat and steam for production.

19. In the decades after Brown Shoe ceased its operations at the Site, portions of the property were used at different times by a furniture business, an aluminum siding business, and most recently a taxidermy studio.

20. One of the standing buildings on a portion of the property is occupied by a closed taxidermy business called Brees Studio, Inc. Mr. Gary Brees, the former owner of Brees Studio, uses parts of the Site as storage space.

21. The Site is otherwise abandoned and unmaintained.

**Prior Response Actions**

22. In 2016, a wall of one of the multi-story buildings at the Site collapsed.

23. In 2019, the remaining portions of that building were demolished through an arrangement that the City of Murphysboro worked out with the then-owner of the Site property.

24. Pre-demolition photos of the partially collapsed building at the Site documented the presence of likely asbestos-containing material in piping insulation and equipment insulation. Rather than being removed from the Site, the debris and rubble from the demolition was consolidated in a large pile situated just north of the remaining buildings. That area was fenced to restrict access, but the debris pile is uncovered and exposed to the elements.

25. In November 2022, upon request of the Murphysboro mayor, the Illinois Environmental Protection Agency ("IEPA") conducted a site visit to inspect the facility and evaluate the environmental concerns. The IEPA inspector observed several sources of potential hazardous substances releases at the Site, including: (i) pipe wrap insulation in some of the remaining structures that was likely to contain asbestos; (ii) industrial-grade electrical switches, dials, and pressure gauges in and around the remaining structures that may contain mercury; and (iii) five liquid-containing 55-gallon drums labelled as "flammable."

26. Asbestos, mercury, and ignitable wastes are formally classified as "hazardous substances" that can be addressed through CERCLA response actions. 40 C.F.R. § 302.4.

27. Based on its inspection, IEPA referred this matter to the U.S. EPA on May 24, 2023. Over the course of months, EPA On-Scene Coordinator Mr. Adam Vrabec, and other EPA employees, made multiple unsuccessful attempts to solicit and secure consent for EPA to access and inspect the property from the LLC Owner and Mr. Jarzebiak.

28. In December 2023, Mr. Vrabec visited the Site, inspected it from the property perimeter, and observed that the state of the property was consistent with the IEPA referral—the debris pile remained exposed and the remaining structures were in poor condition.

29. Having been unsuccessful in securing voluntary access to the Site property, the United States Department of Justice, on behalf of EPA, filed an Application for an Ex Parte Administrative Warrant for Entry, Inspection, and Sample Collection. On July 2, 2024, this Court granted an Administrative Warrant to Enter and Access Property.

30. On July 24, 2024, EPA executed the warrant to access the property and conduct the Site assessment. EPA sampled areas suspected of containing asbestos-containing material, including the exposed debris pile, piping insulation, window glazing, roofing, and other materials found in the buildings. EPA also sampled various drums and containers suspected of containing hazardous substances, in addition to conducting monitoring and security activities. The warrant has now expired.

31. Results from the sampling confirmed the presence of materials containing chrysotile asbestos and amosite asbestos. The sampling showed easily crumbled or "friable" asbestos-containing materials, or asbestos-containing materials with the potential to become friable, throughout the Site, including large amounts of confirmed asbestos-containing materials

in pipe wrap, insulation, and roofing material intermixed within the exposed debris piles and released to the environment. In total, 18 of the 34 bulk samples collected at the site contained asbestos.

32. Three of the five drums that EPA tested at the Site contained hazardous substances, including benzene, lead, and ignitable hazardous waste. EPA observed other drums at the Site, but they were inaccessible due to safety concerns and could not be tested for hazardous substances.

33. EPA also found that one of the buildings posed an immediate threat of collapse. The building is fully exposed to wind, rainwater intrusion, and freeze-thaw cycles. Should the building fall, additional asbestos-containing materials will be exposed to the elements, increasing the likelihood that asbestos fibers migrate off to neighboring areas. Additional collapse also risks damaging the drums and inadvertently exposing their contents to the outside environment.

34. On February 11, 2025, EPA issued an Action Memorandum ("Action Memo") that detailed the results of EPA's Site assessment, the Site conditions, the nature of the known and suspected hazardous substances, and the potential exposure pathways. Based on these factors, EPA determined that the actual or threatened release of hazardous substances from the Site may present an imminent and substantial endangerment to public health, welfare, or the environment if not addressed by implementing the response actions selected in the Action Memo.

35. This Complaint seeks entry of an Access Order for EPA personnel to implement the response actions selected in the Action Memo to remove the asbestos contamination and other hazardous substances that pose threats to public health, welfare, or the environment.

**The Need for Access to the Property by EPA and its Representatives**

36. Asbestos, found in asbestos-containing materials, is a hazardous substance within the meaning of CERCLA § 101(14), 42 U.S.C. § 9601(14), and 40 C.F.R. § 302.4(a).

37. Benzene is a hazardous substance within the meaning of CERCLA § 101(14), 42 U.S.C. § 9601(14), and 40 C.F.R. § 302.4(a).

38. Lead is a hazardous substance within the meaning of CERCLA § 101(14), 42 U.S.C. § 9601(14), and 40 C.F.R. § 302.4(a).

39. Ignitable hazardous waste is a hazardous substance within the meaning of CERCLA § 101(14), 42 U.S.C. § 9601(14), and 40 C.F.R. §§ 261.21 and 302.4(b).

40. To protect public health, public welfare, and the environment, EPA and its representatives must access the Site to conduct a time-critical removal action to address the release or threatened release of hazardous substances, pollutants, or contaminant from the Site.

**EPA's Efforts to Obtain Consent for Access to the Site**

41. EPA has attempted to obtain the LLC Owner's consent for EPA to access the Site since July 2023, but EPA's efforts have been unsuccessful.

42. After the Court granted an Administrative Warrant to Enter and Access Property, a copy of the Warrant was sent to the Carmel, New York, mailing address for the LLC Owner listed in the Jackson County property records, but it was returned as undeliverable.

43. Since its sampling at the Site, EPA has continued to pursue the LLC Owner's consent for EPA to access the Site. On September 26, 2024, EPA engaged a process server to deliver an access agreement and a request for information to the Carmel, New York, mailing address for the LLC Owner listed in the Jackson County property records. The process server

was unable to deliver the documents and reported that the Carmel, New York, property appeared vacant.

44.　　On December 6, 2024, EPA On-Scene Coordinator Adam Vrabec reached Mr. Jarzebiak by phone and apprised him of the Site assessment results. Mr. Vrabec explained that the Site assessment confirmed the presence of asbestos in the debris pile and other areas at the Site and indicated that EPA is seeking access to clean up the hazardous substances. Mr. Vrabec informed Mr. Jarzebiak of the attempted process server delivery of the access agreement and request for information.

45.　　Mr. Jarzebiak denied receiving any documents, but confirmed his Carmel, New York, address. He stated that he was trying to get a permit for a Site cleanup and had spoken with a contractor. He did not grant consent for EPA to access to the Site.

46.　　Despite at least three additional attempts to get in contact with Mr. Jarzebiak, through phone, text, and email, EPA had not heard from him since the December 6, 2024, telephone call. Recently, EPA was able to reach Mr. Jarzebiak to inform him that the government planned to seek a court order for access. He did not grant or deny access to the Site and again confirmed his Carmel, New York, address.

47.　　EPA obtained consent for access to the Site by Mr. Brees, who uses parts of the Site as storage space.

### **Claim for Relief: Access Order for Site Property**

48.　　Paragraphs 1 through 47 are re-alleged and incorporated by reference.

49.　　Inspection records and laboratory analyses of the samples collected from the Site property during the July 24, 2024 Site visit establish that pipe wrap, insulation, and roofing material contain asbestos and are intermixed within the exposed debris piles from the collapsed

and partially demolished buildings. The Site is contaminated with friable asbestos-containing materials that have been released to the environment. The inspection also found at least three drums containing hazardous substances within the meaning of CERCLA.

50. The Site is unsecured and unmaintained. Despite efforts described in Paragraphs 41-46, EPA has been unable to gain consent from the LLC Owner to access the Site for removal activities.

51. EPA seeks access to the Site: (i) from which or to which a hazardous substance or pollutant or contaminant has been or may have been released; (ii) where a further release of a hazardous substance is or may be threatened; and (iii) where entry is needed to determine the need for response or the appropriate response or to effectuate a response action. CERCLA § 104(e)(3)(B)-(D), 42 U.S.C. § 9604(e)(3)(B)-(D).

52. EPA and its representatives should be granted access to implement the response actions identified in the Action Memo, which include: develop and implement a Site Health and Safety Plan, a Site Emergency Contingency Plan, and an Air Monitoring and Sampling Plan; secure the Site perimeter; establish and implement an asbestos debris management plan and air monitoring; conduct structural integrity assessments; remove and dispose of structures as necessary to safely access areas that may contain hazardous substances, pollutants, or contaminants; characterize and segregate asbestos waste from non-asbestos debris; establish and maintain staging and stockpile areas; remove and dispose of asbestos pipe wrap and other asbestos debris; load, transport, and dispose of asbestos, or other identified hazardous substances, pollutants, asbestos-impacted wastes, or contaminants at an EPA-approved disposal facility; characterize and dispose of abandoned waste drums and containers; decontaminate the Site; and

perform visual confirmation and confirmatory sampling of excavated areas to ensure hazardous substances have been removed.

### Prayer for Relief

WHEREFORE, Plaintiff the United States of America respectfully requests this Court to:

1. Issue an Access Order granting EPA and its designated representatives access to the Site for the purposes outlined above; and

2. Grant such other relief as the Court deems appropriate.

ADAM R.F. GUSTAFSON
Acting Assistant Attorney General
Environment & Natural Resources Division
United States Department of Justice

/s/ *Sanya Shahrasbi*
SANYA SHAHRASBI
Environmental Enforcement Section
Environment & Natural Resources Division
United States Department of Justice
P.O. Box 7611
Washington, D.C. 20044-7611
Phone: (202) 305-0386
Email: sanya.shahrasbi@usdoj.gov